TATE, Justice.
The defendant Alexander was convicted of armed robbery, La.R.S. 14:64, and sentenced to fifteen years imprisonment at hard labor. His seven assignments of error on appeal present two principal issues: (1) the admissibility of his confession; and (2) the denial of a motion to suppress his identification by the victim of the robbery, as based upon allegedly unduly suggestive pretrial identification methods.
We find no factual merit to most of the contentions urged and see no need to detail the factual evidence with regard to them.[1] However, an arguable issue is presented in connection with the admissibility of the confession (Assignment 1) which in our view requires note.
The defendant’s counsel contends he was retained (consulted) by the accused shortly after the day of his arrest (Friday, November 18) and that he had instructed the defendant not to consent to questioning except in the presence of his lawyer. He further suggests that the record shows that state officers knew of this instruction, if only through the jailer deputy, but (it is argued) also because of reasonable indications to the interrogating deputies that counsel had been retained.
The defendant’s counsel therefore forcefully argues that the continued questioning of the accused on Tuesday, November 22, at which a confession to the instant crime was secured, was in violation of the accused’s constitutional right to the effective assistance of counsel, and that the confession to the present crime obtained on that day[2] was inadmissible. See: State v. Weedon, 342 So.2d 642 (La.1977); Brewer v. Williams, 430 U.S. 387, 97 So.2d 1232, 51 L.Ed.2d 424 (1977), noted 38 La.L.Rev. 239 (1977).
Within a proper credibility evaluation, the trial court accepted the testimony of the interrogating police officers that they had no knowledge that the defendant Alexander, a 17 year old black youth of low intelligence (IQ 75) had actually consulted a lawyer or that he had been instructed by an attorney not to consent to interrogation in the absence of his lawyer. Nor is there evidence that any other state officer so knew, so that such imputed knowledge should have inhibited questioning in derogation of the effective assistance of counsel.
The testimony of both Alexander, his grandmother, and the testifying police officers agree that:
The defendant Alexander was arrested on Friday for another armed robbery (of a washerteria), to which he orally confessed. He and the interrogating officers agreed that the confession would be reduced to writing on Monday. On Monday, however, Alexander requested that he first speak to his grandmother. He telephoned her, and she came to the place of interrogation. She advised her grandson to tell what he knew. A confession to the washerteria robbery was then taken in writing. On the following day, the police officers again questioned Alexander concerning two other robberies (including the present one), in which he had reportedly been involved.[3] He then made first oral and then written confessions to *1339 each of them. Before the start of each interrogation period, as well as before securing his written confessions, the officers had informed Alexander of his Miranda rights and (before the written confessions) had secured written acknowledgement from him of this circumstance.[4]
With regard to the issue of whether the police officers violated his constitutional right to the effective assistance of counsel, the police officers testified that they knew Alexander had a “family lawyer” whom he had used in the past, and that Alexander’s grandmother was investigating the possibility of retaining him for the instant case, with the intention of doing so. Their evidence does not reveal that they knew Alexander had actually consulted his lawyer or that, as yet, any firm arrangements had been made to retain him; at most, they knew there was a possibility that Alexander might retain him.
In fact, however, Alexander’s (later-retained) lawyer had earlier seen him at the jail on Saturday morning, had left his card, and had written instructions to Alexander not to consent to questioning. On the other hand, on Monday, Alexander’s grandmother (who intended to look into retaining the lawyer) advised Alexander to tell the officers all he knew about the charges against him.
The evidence as a whole supports the trial court’s finding that the police officers did not have knowledge of facts to put them on reasonable notice that Alexander was represented by counsel. We find no merit to the contention, therefore, that they questioned Alexander in the absence of his counsel or without first consulting his counsel. See State v. Hebert, 356 So.2d 991, 995 (concurring opinion) (La.1978). Additional credence is lended to their testimony to such effect by the circumstances (a) that they immediately sent for Alexander’s grandmother when he requested consultation with her before reducing his oral confessional to writing, and (b) that they honored the request of his counsel to the jailers, when actually retained after the Tuesday confessions, to conduct no more questioning of Alexander concerning various other crimes of which he was suspected, Tr. 78-79.

Decree

Finding no merit to the assignments of error, we affirm the conviction and sentence.
AFFIRMED.

.Under evidence properly accepted by the district court as credible and preponderating, we find no factual merit to the defendant’s contentions that (1) his confession to the instant robbery should be suppressed as the product of an illegal arrest, or as not free and voluntary (in the main because of allegedly unrebutted testimony by him as to specific misrepresentations and inducements) (Assignments 1, 5, 6); and (2) that the victim’s pre-trial identification of the accused as her robber should be suppressed, as tainted by impermissibly suggestive procedures and as not independently based upon her observation of him at the time of the robbery (Assignments 2, 3, 4, 7).

. That is, pretermitting an earlier confession to another crime, which we find to have been voluntarily made, see Footnote 1 above.

. Officers had been so informed by a female friend of his, and by a confessing confederate to one of them.

. We have previously noted (see Footnote 1) that we find no error in the trial court’s finding that no inducements nor misrepresentations had been made to Alexander to secure these confessions, despite Alexander’s testimony to the contrary. Nor do we find error in the trial court’s rejection of the grandmother’s testimony that Alexander had informed the officers that he had a lawyer.